*230
 
 HaxTj, Judge,
 

 delivered tlie opinion of ííio Court:
 

 The first clause of the will connected with this question, anil by which the premises are given to Mary Mabson, certainly has only the effect of conveying to her an estate for life. The testator has not even expressed an intention of giving away
 
 the whole
 
 of his estate; a circumstance, which in many cases, has been much relied upon. But what appears to be decisive of the question, is the clause in which the testator directs, “ that in case of the death of any of my aforesaid children without issue, before the time they can get possession of their respective legacies, the legacies before bequeathed to such child so dying, shall be equally divided between the survivors, or survivor of them.” It has been argued that the word legacy relates only to personal
 
 property;
 
 and no doubt it would be more correct to use it in that way; but most testators are unacquainted with that circumstance, and apply
 
 this
 
 word indiscriminately to both real and personal property, and so the testator applied it' in this case. Tile case of Hope on the demise of Brown and wife
 
 v.
 
 Taylor, 1 Burr, 2G8,
 
 *
 
 is an authority that settles this question. It certainly never could bo the intention of the testator, that in case Mary died before she got possession of the property given to her by the will, the personal property should be divided among the survivors, and the real estate either go to a residuary, legatee, or to the heir at law, as property undisposed of. Let judgment be entered for the Defendant.
 

 *
 

 The case stated was this: Robert Johnston, seized in fee, (inter aiia,) of a
 
 copyhold
 
 of inheritance, and having first surrendered to the use of Jus will, devised to John tVcdgeborough, his sister’s eldest son, liis house in the Brook, with the out-building's, and
 
 £
 
 30 to be paid wither twelve months after his decease ; to his nephew, Robert Taylor,
 
 £ 50,
 
 to be paid within twelve months after his decease; to ills nepnews, diaries Taylor, Robert Taylor and William Taylor, Iris sis-i< r's three sons, twenty-nine acres of arable and meadow land, bought ■ ofE.! not ts be parted, but to part the rent equally between them.
 
 *231
 
 Then to William Taylor, his sister’s son; tlie bouse in question, by the description of
 
 “
 
 his House on the Green; with the ground and outhouses thereto belonging tad gave him also
 
 £
 
 10; and to his brother-in-law, .Charles Taylor,
 
 £
 
 5; and he directed that the said
 
 legacies
 
 be paid within twelve months after his decease ; and declared his will and meaning to be,
 
 “
 
 That
 
 if either
 
 of the persons before named die
 
 •without issue lawfully
 
 begotten; then the said
 
 legacy
 
 shall be divided equally
 
 between them that are left alive. ”
 

 The testator had
 
 five
 
 houses in all; and the will began with this expression, “ as to
 
 all
 
 my
 
 worldly estate,”
 
 &c. and it concluded thus : “.And all the
 
 rest
 
 of my houses, goods, lands and cattle, I give to my ' kinswoman, Elizabeth Wedgeborough, and make her my sole executrix.”
 

 William Taylor entered and was admitted, and enjoyed till the 15th June, 1775, when he died, leaving the Defendant, William Taylor, his only son and heir at law.
 

 ' The wife of Brown, the lessor of the Plaintiff, was heir at law to the testator, and as such, brought the ejectment against William Taylor the son, who claimed as tenant in tail.
 

 And the question made in the case and decided by the Court was,
 
 “
 
 What estate William Taylor, the devisee, took by the will ?
 
 Vide
 
 whether an estate
 
 tail,
 
 or
 
 for life
 
 only ?
 

 Lord Mansfield. It is admited that if the word
 
 legacy
 
 is applicable to lands, William Taylor has an estate tail. This is plainly a will of the man’s own drawing'; he professes to dispose of his
 
 whole
 
 estate. He means to make
 
 one
 
 of his relations his general heir ; the other oh-
 
 *232
 
 jects of Ills bounty are four nephews, and he gives them land, and also some pecuniary legacies; to be paid within twelve months after his death. Then he gives his brother-in-law
 
 £ S.
 
 And if either these persons before mentioned,
 
 shall die -without issue
 
 lawfully begot., ten, then he gives the said legacy “ to those who shall be left alive* to be equally divided between them.
 

 The explanation of this word “ legacy,” must be governed
 
 by
 
 the intention of the testator; and to this purpose some stress may be laid upon this introduction of the professed disposition of
 
 all
 
 his Worldly-estate. A different construction has been sometimes put upon the very-same words, as applied to money and lands, in order to support the intent of the testator, as in the case of
 
 Forth
 
 v.
 
 Chapman,
 
 by Lord Mac-lesiield. It is most agreeable to the intention of the testator in this case, to construe the word “ legacy,” to extend to land. It would not be a
 
 legal
 
 limitation if confined to money. The legacies may happen to' be spent soon after the twelve months is expired. And it could never be intended that so small a sum as the
 
 £ 5
 
 should be put out to interest, and kept liable to this limitation. If the brother-in-law died without issue, there would be no one left to divide the legacies.
 
 Common
 
 people do not make such distinction between money and land, as persons conversant in law matters do. The testator meant this clause as a restraint upon his former bequest, and meant that the issue should have it. The word “ legacies” does extend to lands, as well as to monies. Common people would not think of using the word
 
 devise,
 
 although it be the more usual technical term. Judgment for the ¡Defendant.